JONES *v*. UNEMPLOYMENT COMPENSATION COMMISSION.

1. UNEMPLOYMENT COMPENSATION—REDETERMINATION AS TO BENE-
FITS—NOTICE FROM EMPLOYER.

    A redetermination as to benefits payable under the unemploy-
ment compensation act became necessary upon receipt by the
commission of notice from the employer that benefits had
been improperly paid to claimant, since that is the only
way in which a mistake in paying benefits could be corrected
(CL 1948, § 421.32).

2. SAME—REDETERMINATIONS.

    Each check for payment of benefits under the unemployment
compensation act constitutes a determination, hence, sub-
sequent action by the commission, following receipt of pro-
test by the commission, constitutes a redetermination.

3. SAME—PROTEST AS TO PAYMENT OF BENEFITS—REDETERMINATION.

    Employer's protest as to payments made to claimant for un-
employment benefits because he had been paid wages for
2 weeks during which benefits were claimed and received
constituted a proper basis for a redetermination by the com-
mission of claimant's eligibility to receive benefits and an
appeal therefrom to the referee (CL 1948, §§ 421.29, 421.32).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–6] Generally as to right to unemployment compensation, see 48
Am Jur, Social Security, Unemployment Insurance, and Retire-
ment Funds § 34 *et seq.*

[4, 7] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds § 38.

    What amounts to "Misconduct," precluding benefits under unem-
ployment compensation act to discharged employee.    146 ALR
243.

    Leaving employment, or unavailability for particular job or duties,
because of sickness or disability, as affecting right to unemploy-
ment compensation.    14 ALR2d 1308.

[5] Construction and application of statutory provisions requiring
filing of payroll reports or other statistics for purpose of unem-
ployment insurance.    174 ALR 410.

4. SAME—DISCHARGE—DISQUALIFICATION FOR BENEFITS.

Discharge of claimant employee, an epileptic, from service of defendant employer *held*, not to have been for misconduct connected with his work in that he misrepresented his condition, where there is evidence that during his intermittent employment of about a year his condition was known to the employer and he was given work of such a nature that a seizure while at work would not be dangerous to him, hence a finding that he was not disqualified to receive benefits because of the discharge was proper (CL 1948, § 421.29).

5. SAME—MISREPRESENTATIONS.

Finding that employer's agent intentionally made false statements and misrepresentations or concealed material information to avoid the payment of benefits under the unemployment compensation act and was subject to the statutory penalties therefor, *held*, sustained under record presented (CL 1948, §§ 421.54, 421.62).

6. SAME—REVIEW BY CIRCUIT COURT—JURISDICTION.

Employer's motion to dismiss claimant's appeal in nature of certiorari from decision of appeal board of the unemployment compensation commission because claimant had not been harmed by the board's decision and because the employer had not been made a party to the appeal and denial of employer's subsequent motion for a rehearing on denial of its motion to dismiss were proper, where circuit court ordered that the employer be added as a party defendant, hence employer's claim on appeal that the circuit court was without jurisdiction was without merit.

7. SAME—MISREPRESENTATION AS TO RECEIPT OF WAGES—REIMBURSEMENT—DISQUALIFICATION FOR BENEFITS.

A claimant for benefits under the unemployment compensation act, who fails to make disclosure that he has received wages from his employer for the same time and was not unemployed was disqualified from receiving benefits until he made reimbursement (CL 1948, § 421.21).

Appeal from Wayne; Culehan (Miles N.), J. Submitted January 18, 1952. (Docket No. 50, Calendar No. 45,342.) Decided April 7, 1952.

Certiorari by Arnold Jones against Unemployment Compensation Commission to review order of

Appeal Board of Unemployment Compensation
Commission setting aside referee's decision and re-
determination. Order reversed and referee's deter-
mination that plaintiff should make reimbursement
and Packard Motor Car Company is subject to penal-
ties. Packard Motor Car Company appeals. Af-
firmed.

*Zwerdling & Zwerdling,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, and *Laurence A. Price,*
Assistant Attorney General, for Unemployment
Compensation Commission.

*Bodman, Longley, Bogle, Armstrong & Dahling*
(*Grant E. Armstrong* and *Alfred C. Wortley, Jr.,*
of counsel), for defendant Packard Motor Car Com-
pany.

Boyles, J. This is an appeal by the Packard
Motor Car Company, employer (hereinafter called
Packard), from an order entered by Judge Culehan
in the Wayne county circuit court reversing a deci-
sion of the appeal board of the Michigan Unemploy-
ment Compensation Commission* and reinstating
a decision of the referee allowing unemployment
compensation to the plaintiff employee.

Plaintiff was first employed by Packard on Sep-
tember 30, 1947, as a metal finisher. He was an
epileptic and about a month later suffered an epilep-
tic seizure while at work. He shortly thereafter re-
sumed work for Packard and continued working part
of the time until August, 1948, during which month

---

* Name changed to Michigan Employment Security Commission
by PA 1951, No 251, CL 1948, § 421.3 (Stat Ann 1951 Cum Supp
§ 17.503).

This case is controlled by the statute in effect before the amend-
ments in 1951.

he was likewise intermittently employed. Packard allowed him to do work that he might properly perform without danger of unfortunate results whenever he should have another seizure while at work. On August 11, 1948, he filed a claim for unemployment compensation, and on August 31, 1948, suffered a seizure for which he was sent home from Packard's plant. On September 3, 1948, Packard received a copy of a benefit check payable to plaintiff for $24 for week No. 33 which ended August 21, 1948. Packard's records indicated that the plaintiff had earned $69.40 wages for that week and on September 8th Packard wrote the commission of that fact, requesting that credit be issued to its experience record, and asking that "the penalties provided by the act be imposed."

The question has been raised at the outset of this appeal, whether this letter of protest formed a proper basis for a redetermination by the commission. In effect, Packard's letter requested a credit of $24 to Packard's experience record because plaintiff had earned $69.40 in wages during the week covered, and asked that penalties be imposed against the claimant. If that were true, plaintiff would not be entitled to unemployment compensation for that week (No. 33). Following that, the commission also issued a check for $24 for week No. 34 ending August 28, 1948, of which Packard also received a copy. On September 17, 1948, Packard wrote the commission, stating:

"On September 8th we advised you as to the claimant's receiving earnings for benefit week #33. Subsequently on September 17th we received copies of checks for benefit weeks #34 and #35. Our records further show the claimant had earnings for benefit week [*sic*] #34 (33?) in the amount of $69.40 and for benefit week [*sic*] #35 (34?) he had earnings in the amount of $22.99. His last day of employment

with our company was August 31, 1948 following which he was cleared."

Counsel for plaintiff concede that the plaintiff was erroneously paid benefits for week 33 ending August 21, 1948, and week 34 ending August 28, 1948, having earnings for those weeks in excess of his primary weekly benefit rate, and therefore not eligible for benefits for those weeks. In their brief counsel for plaintiff concede that:

"The protests of September 8, 1948 and September 17, 1948, were timely and within the statutory period and the commission was compelled as a matter of law to issue a redetermination.

"Under section 32(c) of the act and regulation 270, the payment of benefits is suspended upon a 'request for redetermination in all cases where the employer has submitted information regarding possible ineligibility or disqualification.' Such information was submitted in each of these letters."

When the commission received the notice that benefits had been improperly paid to plaintiff for weeks 33 and 34 and charged against Packard's experience record, it was necessary that a redetermination be considered. That was the only way in which a mistake in paying benefits to which plaintiff was not entitled could be corrected. Because of the fact that each check itself was a determination, any subsequent action by the commission, following the receipt of the protest by the employer, had to be in the form of a redetermination. We agree with Judge Culehan that there was a proper basis for a redetermination of plaintiff's eligibility to receive benefits. The circuit judge properly set aside a later decision of the appeal board wherein it concluded that the commission had no authority to make the redetermination. Regardless of the question now urged against the validity of the redetermination, section

32 of the act expressly provides that the commission may on its own motion review any determination and thereafter issue a redetermination, and notify the interested parties of the action taken. It follows as a matter of course that the referee subsequently had authority to hear an appeal from said redetermination by the commission.

Late in September, 1948, plaintiff was interviewed by an examiner for the commission who took plaintiff's signed statement and on November 4, 1948, the commission issued said notice of redetermination, a copy of which was sent to plaintiff and to Packard, as follows:

"The claimant named above filed a claim for unemployment benefits on 8–11–48. A request for redetermination of the claim has been received. Upon review and re-examination of the facts the claim is redetermined as follows:

"It has been redetermined that this claimant was discharged for reasons not constituting misconduct in connection with the work, within the meaning of section 29(1)(a) of the act. The claim is therefore allowed without disqualification.

"It has been further redetermined that this claimant was employed from 8–15–48 through 9–4–48, therefore ineligible for benefits.

"However, you are disqualified from 8–15–48 and until you complete restitution in cash of benefits received through misrepresentation for the period 8–15–48 through 9–4–48. Section 29(1)(c).

"If you do not agree with this redetermination, either on the basis of the facts presented or the application of the law, you may file an appeal for a hearing before a referee."

In effect, the redetermination held that plaintiff was not disqualified from receiving benefits on the ground that he had been discharged for misconduct under section 29(1)(a) of the act (CL 1948, § 421.29

[Stat Ann 1950 Rev § 17.531]) but that he could not get benefits until he paid back what he had received for August through his misrepresentations, in violation of section 29(1)(c).

On November 12, 1948, Packard filed an appeal for a hearing before a referee from said redetermination.

The first question posed for the consideration of the referee was whether plaintiff had been severed from his employment for reasons not constituting misconduct connected with his work, within the meaning of section 29(1)(a) of the act. On this issue much testimony was taken and many exhibits received during the course of the hearing. A Mr. Upthegrove, representing Packard and testifying at length, attempted to establish that plaintiff's failure to disclose his disability when he secured the employment was tantamount to "misconduct connected with his work" which would disqualify plaintiff, under section 29(1)(a) of the act, from receiving any benefits. The record satisfies us that plaintiff was severed from employment for reasons quite disconnected from his physical disability. Packard had accepted and continued to receive plaintiff's services during the period of time here involved, with full knowledge of plaintiff's disability, allowing plaintiff to work under circumstances which would negative the claim that his disability constituted "misconduct" connected with his work. Testimony was taken covering the other disqualifications for benefits set out in said section 29(1)(a),* the applicable part of which is as follows:

"Sec. 29.  (1) An individual shall be disqualified for benefits:

"(a) For the duration of his unemployment, in all cases where the individual has: (1) left his work

---

* CL 1948, § 421.29 (Stat Ann 1950 Rev § 17.531).

voluntarily without good cause attributable to the employer, or (2) has been discharged for misconduct connected with his work or for intoxication while at work."

We are in accord with the referee's conclusion wherein he decided as follows:

"On the basis of the entire record and evidence in this case, the employer's motion for the withdrawal of the appeal is hereby denied. The referee further finds that claimant's separation from the employ of the Packard Motor Car Company, on August 31, 1948, was not under disqualifying circumstances *under section 29(1)(a)(1) and (2)* of the act; therefore, he is entitled to benefits without a disqualification, *if otherwise eligible.*" (Emphasis supplied.)

When it began to appear during said hearing that Packard's agent and material witness at the hearing had concealed material information from the commission and made misrepresentations to avoid payment of benefits to plaintiff, he moved that the referee allow a withdrawal of Packard's appeal. As indicated in the opening sentence of the referee's decision, hereinbefore quoted, the motion to withdraw was denied. Packard's representative at first concealed from the commission and the referee the pertinent facts as to the reason for plaintiff's discharge from work and Packard's knowledge of plaintiff's disability. He first claimed that by failing to disclose that he was subject to epileptic seizures plaintiff's discharge "was the same as for misconduct." However, it developed that during almost the entire time of his employment plaintiff had been allowed to work, with Packard's full knowledge of his disability, at employment where his disability would not interfere with his work. He had suffered a seizure in the plant during his first month of work in October, 1947. When a *subpoena duces tecum* was

issued to bring in Packard's records, Upthegrove moved to withdraw the appeal for the obvious reason that Packard's records would establish his misrepresentation and concealment in the testimony first given by him as Packard's agent as to whether plaintiff was disqualified from receiving benefits. As to that, the referee's decision, with which we agree, was as follows:

"The referee further finds that the Packard Motor Car Company, through its authorized 'agent,' intentionally made false statements and/or misrepresentation, and/or concealed material information to avoid the payment of benefits, and/or liability for charges of benefits in violation of section 62 (d) of the act. Therefore, the employer is subject to the penalties provided therein.

"The referee further finds that the said 'agent,' Walter Upthegrove, made false statements and/or misrepresentation, knowing them to be false and/or knowingly and wilfully with intent to defraud, failed to disclose a material fact or facts to prevent the payment of benefits to the claimant, in violation of section 54 (b) of the act."

Under section 62 of the act (CL 1948, § 421.62 [Stat Ann 1950 Rev § 17.566]) Packard became liable to the commission for a penalty in an amount equal to the benefits allowed to the plaintiff. Under section 54 of the act (CL 1948, § 421.54 [Stat Ann 1950 Rev § 17.558]) one who knowingly makes a false statement or representation, or with intent to defraud fails to disclose a material fact, may be deemed guilty of a misdemeanor.

A few days before the foregoing decision of the referee was made, Packard filed with the appeal board 2 motions, to remove the hearing from the jurisdiction of the referee to the appeal board, and for a stay by the appeal board of any further proceedings before the referee. At the hearing of these

motions by the appeal board, counsel for Packard stated:

"We are asking the board to issue an order removing this case as of March 2, 1949, which was the date of the petition, from the jurisdiction of the referee.    *    *    *

"*Chairman Smith:* But the case is here by regular appeal filed within 15 days after the issuance of the decision.

"*Mr. Armstrong:* After the decision was issued it was appealed."

On the above 2 motions, the appeal board, after an extended hearing, entered the following order:

"This case is before the appeal board upon applications of (1) application to remove case from referee to appeal board, (2) application for immediate stay of proceedings, filed by the employer, through and by its attorney, and the appeal board having read and considered said applications, and having reviewed the arguments presented on behalf of the parties in interest, is of the opinion that said applications should be denied.

"It is therefore ordered that said applications shall be and the same are hereby denied."

In due course of time the appeal from the referee's decision was heard by the appeal board. Acting within its admittedly discretionary powers, the appeal board denied Packard's application to take additional testimony. Thereupon Packard sought from this Court a writ of mandamus directed to the appeal board commanding it to hear witnesses and take further testimony, asking this Court to stay all further proceedings before the appeal board. Upon the filing of briefs that application was denied by this Court. Subsequently the appeal board heard the appeal as a board of review. The original purpose of the hearing, to determine whether plaintiff

was entitled to the $72 he had received under the act, and on what conditions, was clouded by technical objections raised during the proceedings before the appeal board, which covered 150 pages of the printed record before us, consisting mainly of statements and arguments of counsel appearing before the board. At the conclusion of the hearing, 2 of the 3 members of the appeal board (the third member dissenting) concluded that Packard's letter of September 8, 1948, heretofore referred to should *not* be considered as a basis for a redetermination. The appeal board held:

"Hence, said letter (Packard's letter of September 8th to the commission) cannot be considered as an application for a redetermination. The commission's action in issuing the so-called redetermination of November 4, 1948 is, therefore, invalid and void and the referee should have so held. The referee had no authority or jurisdiction to consider said claim on its merits and in fact had no jurisdiction to do anything except enter a decision to the effect that said so-called redetermination was invalid and void.
\*    \*    \*

"The decision of the referee is hereby set aside and held for naught."

Thereupon the plaintiff took an appeal in the nature of certiorari from said decision to the circuit court for Wayne county. Packard moved to dismiss the appeal on the grounds that the plaintiff had not sustained any injury by the decision of the appeal board, and because Packard had not been made a party in the appeal. The circuit judge hearing said motion denied Packard's motion to dismiss and also denied a subsequent motion by Packard for a rehearing on said motion, and ordered that Packard be added as a party defendant on the appeal. We find no merit in appellant's claim now made, that the

circuit court was without jurisdiction and should have granted the motion to dismiss the appeal.

The circuit judge heard the entire matter on a transcript of the proceedings before the referee and the appeal board and the arguments of counsel. On August 16, 1951, these proceedings finally culminated in an opinion by the circuit judge. After reciting in detail the many steps taken in the proceeding, beginning with plaintiff's claim for unemployment compensation filed August 11, 1948, and including orders entered by this Court on 5 different occasions denying mandamus, prohibition, leave to appeal and reconsiderations, the circuit judge concluded:

"In my opinion, the (appeal) board majority was clearly in error in holding that the commission had no authority to issue a redetermination and, consequently, that the referee had no jurisdiction to proceed upon the appeal from that redetermination to the referee by the company. The decision of the board majority is hereby set aside as both contrary to law and to the great weight of the evidence. Its decision is without support in the record made before the referee and the appeal board.

"The referee was the trier of the facts, saw and heard the witnesses, and gave them ample opportunity to present their case. In my opinion, his decision was not contrary to the law or to the great weight of evidence.

"Upon review of the questions of fact and law on the record made before the referee and the appeal board, pursuant to section 38 of the Michigan unemployment compensation act, the decision of the referee is hereby adopted as my decision, both as to findings of fact and as to law.

"An order will be entered reversing the decision of the appeal board majority and holding as did the referee."

Following the entry of an order in accordance with the foregoing conclusion, and the entry of an order denying Packard's motion for a rehearing, on October 2, 1951, Packard filed a claim of appeal to this Court from said order denying rehearing. Insofar as the questions raised here by the appellant are essential to decision, they have been covered. The only question decided by the appeal board was that the commission did not have the authority to enter the redetermination, and that as a consequence the referee did not have any basis for hearing or deciding an appeal from such alleged legally nonexistent redetermination. We hold that the appeal board was in error, that the commission had authority to make the redetermination and the referee had authority to hear the appeal from said redetermination; that plaintiff was not disqualified for unemployment benefits on account of section 29 (1) (a) of the act; that Packard is subject to the penalties provided in section 62 (d) of the act; and that Packard's agent Upthegrove violated the provisions of section 54 (b) of the act. We further hold that the plaintiff, in applying for and receiving benefits for weeks 33, 34 and 35 during August, 1948, obtained the same by means of a misrepresentation or nondisclosure of a material fact, namely, that he had received wages from his employer, Packard, during that time and consequently was not unemployed. Under section 29(1)(c) of the act he is disqualified from receiving benefits until he makes reimbursement, under said section of the act. Other questions raised by appellant incidental to the foregoing conclusions are not controlling of the result.

Affirmed. Costs to plaintiff.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.